[No. 38794.    Department One.    August 24, 1967.]

THE STATE OF WASHINGTON, *Respondent*, v. HERBERT BULLOCK, *Appellant*.*

*Reported in 431 P.2d 195.

*Wm. J. Gaffney,* for appellant (appointed counsel for appeal).

*Herbert Bullock,* pro se.

*Charles O. Carroll* and *Bruce D. Brunton,* for respondent.

BARNETT, J.†—The defendant, Herbert Bullock, was tried on the criminal charge of unlawful possession of narcotics, *viz.,* marijuana. The jury found him guilty and he has been sentenced to a maximum term of 20 years in prison. The defendant now presents an appeal from the judgment of conviction.

On November 17, 1965, Allen L. Fawcett, a member of the Seattle Police Department, received an anonymous tip that the defendant was in a certain apartment at 114 24th East, Seattle. Fawcett discovered that there was a warrant on file for defendant's arrest for second degree assault. With the arrest warrant Fawcett, Detective Jones and a federal agent went to said address about 2 p.m. that day. One officer knocked on the apartment door and defendant opened it. Upon ascertaining defendant's identity he was placed under arrest by the Seattle police officers. Shortly thereafter, defendant was advised of his rights by one of the officers. Detective Jones searched defendant's person for a Standard Oil Company credit card which defendant admits in his brief would be evidence in the assault case. No card was found. Detective Fawcett continued the search for the credit card in the apartment, throughout the living room, bathroom, bedroom and bedroom closet. During this search a vegetable material, later identified as marijuana, was found under the mattress of the bed in two small travel bags and in a plastic sack on the floor of the bedroom closet. The marijuana and other articles were taken into custody by Fawcett. In the two travel bags items with defendant's name on them were found. Also found in one of the travel bags was a letter written by defendant to Mary Lee Kinzy, the lessee of said apartment. Part of this letter was introduced into evidence by the state.

† Judge Barnett is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

When the officers first arrived at the apartment defendant told them he had been asleep. Defendant related to the arresting officers that he was a friend of Mary Lee Kinzy and that he had permission to be in the apartment. One of the police officers testified that the defendant was the only person in the apartment at the time of the arrest and subsequent search.

Detective Fawcett testified that the door to the bedroom was not closed and that men's clothing were found in the bedroom closet.

Assignments of error Nos. 1 and 7 relate to the validity of the search of the apartment and seizure of items introduced into evidence. A timely motion to suppress the evidence obtained by the search was made, and, after a hearing, the motion was denied.

It is conceded that the arrest of defendant was lawful and that the credit card for which the officers were searching would be evidence in the assault case. Defendant also admits that the officers had a right to institute a search incident to the lawful arrest, but he argues that the search of the bedroom and adjoining closet was unreasonable in this case as being too broad in scope. We disagree.

■    The test of reasonable search and seizure cannot be stated in rigid and absolute terms. Each case presented is to be decided on its own facts and circumstances. *Harris v. United States*, 331 U.S. 145, 152-53, 91 L. Ed. 1399, 67 Sup. Ct. 1098 (1947). In the *Harris* case, the police officials were looking for two checks, items which are similar in physical size to the credit card in this case. The United States Supreme Court said in reference to a search for these checks which turned up unrelated contraband and which search was held to be reasonable:

> The same meticulous investigation which would be appropriate in a search for two small canceled checks could not be considered reasonable where agents are seeking a stolen automobile or an illegal still. We do not believe that the search in this case went beyond that which the situation reasonably demanded.

It is well established that police officers have a right, as incident to a lawful arrest, to search the person arrested and the area where the arrest is made. *State v. Jackovick*, 56 Wn.2d 915, 355 P.2d 976 (1960).

■ In the case at bar the police were informed, when they arrested the defendant, that he had been sleeping there at the apartment. No other person was found in the apartment. The bedroom door was not closed and the bed was mussed as if someone had used it. There is no evidence in the record that, at the time of the search, the police officers knew the defendant was only a guest in the apartment. With apparent access to rooms other than where defendant was arrested, the police officers could properly conclude that he used these areas. Hence, we conclude in these circumstances that the search was reasonable.

These assignments of error also involve the seizure of the letter written by the defendant to Mary Lee Kinzy, the renter of the apartment. This letter was found in one of the travel bags wherein some marijuana was also found. The portion of the letter introduced into evidence indicated that the defendant had knowledge of and had used marijuana.

The defendant's only contention in regard to this letter, as made in his pro se supplemental brief, is that it is "mere evidence" under *Gouled v. United States*, 255 U.S. 298, 65 L. Ed. 647, 41 Sup. Ct. 261 (1921); *Harris v. United States, supra*, and other cases; hence, its seizure constitutes an unreasonable search and seizure and a violation of the fourth and fourteenth amendments to the United States Constitution.

The "mere evidence" rule in regard to searches and seizures is explained in R. Davis, Federal Searches and Seizures § 1.711 (1964). The writer comments about the rule as follows:

> Items that have evidentiary value only, i.e., tend to prove the individual committed the offense charged, may not be legally seized during a search with or without a search warrant. Or, put in another way, officers may legally seize only those articles which fall in specific categories . . . [(1) means and instruments of committing a criminal offense; (2) fruits of crime; (3) weap-

ons of escape; and (4) contraband]. Under this rule, it can be stated that officers never conduct a search of a person's protected premises in order to secure evidence against him, but to take into possession property in furtherance of the public interest.

Defendant's reliance upon *Gouled, supra,* goes for nought. Since the oral argument in this case the United States Supreme Court has repudiated the "mere evidence" rule as it has developed out of the *Gouled* case. We quote from the United States Supreme Court decision in *Warden, Maryland Penitentiary v. Hayden,* 387 U.S. 294, 18 L. Ed. 2d 782, 87 Sup. Ct. 1642 (1967):

> The premise in *Gouled* that government may not seize evidence simply for the purpose of proving crime has likewise been discredited. The requirement that the Government assert in addition some property interest in material it seizes has long been a fiction, obscuring the reality that government has an interest in solving crime. *Schmerber* [384 U.S. 757] settled the proposition that it is reasonable, within the terms of the Fourth Amendment, to conduct otherwise permissible searches for the purpose of obtaining evidence which would aid in apprehending and convicting criminals. The requirements of the Fourth Amendment can secure the same protection of privacy whether the search is for "mere evidence" or for fruits, instrumentalities or contraband. There must, of course, be a nexus—automatically provided in the case of fruits, instrumentalities or contraband—between the item to be seized and criminal behavior. Thus in the case of "mere evidence," probable cause must be examined in terms of cause to believe that the evidence sought will aid in a particular apprehension or conviction. In so doing, consideration of police purposes will be required. Cf. *Kremen v. United States,* 353 U.S. 346. . . .
> . . . . The Fourth Amendment allows intrusions upon privacy under these circumstances, and there is no viable reason to distinguish intrusions to secure "mere evidence" from intrusions to secure fruits, instrumentalities, or contraband. (Footnotes omitted.)

We find the seizure of the letter to be reasonable. The letter was found in the same receptacle as some of the marijuana and on its face tended to be inculpatory. It is

just common sense that the police officers should look to see if the letter could provide some clue as to who might possess the marijuana. Certainly the officers could believe that this letter would "aid in a particular apprehension or conviction." *Warden, Maryland Penitentiary v. Hayden, supra.* The physical proximity of the letter to the contraband and its inculpatory character made the search and seizure of it along with the marijuana reasonable in this case.

The defendant states another of his assignments of error as follows: "The trial court erred in refusing to allow the defendant to discharge his attorney during the trial, . . . ."

Counsel had been appointed to defend the defendant at trial. The trial began on January 19, 1967; then about 3:30 p.m. on January 20, the defendant stated to the trial court:

> Your Honor, I don't feel I am being adequately represented here and I'm going to dismiss my counsel and I would like to have this cause a mistrial.

There was no indication in the record, prior to this request by defendant, that he had any sort of dispute with his trial counsel. The trial court denied defendant's request to dismiss his counsel and declare a mistrial. In conjunction with this decision the trial court stated that defendant was being adequately represented by his counsel.

We are of the opinion that, even if defendant had been allowed to dismiss his attorney, there is no reason argued or imaginable in this particular case why a mistrial should have been declared. However, the argument on appeal seems to be on shifted ground. Now it is simply argued that it was error to deny the defendant his right to dismiss his attorney. We are not made aware, nor was the trial court aware at the time of the request, whether the defendant wanted new counsel or wanted to defend himself pro se. Taking these alternative assumptions into consideration we do not find the action of the trial court in denying the defendant's request to dismiss his counsel during the course of this trial to be erroneous.

The right to defend one's self and the necessity of the defendant to have trust and confidence in his counsel

are propositions which defendant can insist upon before trial is convened. However, when they are asserted during trial they are necessarily limited in extent by the necessity of having an orderly proceeding. In *State v. Keller*, 65 Wn.2d 907-08, 400 P.2d 370 (1965), a pertinent observation was made.

We note, with increasing concern, that it seems to be standard procedure for the accused to quarrel with court-appointed counsel, or to develop an undertone of studied antagonism and claimed distrust, or to be reluctant to aid or cooperate in preparation of a defense. This appears to be done in order to argue on appeal that the accused was deprived of due process alleging he was represented by incompetent counsel.

On the precise point that defendant argues in support of his assignment of error a federal court of appeals has stated the following:

After his trial has commenced, a defendant no longer has complete freedom to change counsel or discharge counsel and proceed *pro se*. United States v. Bentvena, supra, 319 F.2d [916] 935, 938, United States v. ex rel. Maldonado Denno, 348 F.2d 12, 15 (2 Cir. 1965). As stated in United States v. Denno, supra, at 15:
"There must be a showing that the prejudice to the legitimate interests of the defendant overbalances the potential disruption of proceedings already in progress, with considerable weight being given to the trial judge's assessment of this balance."

The record of the trial shows that Ellenbogen was fully and competently represented by Attorney Cunniffe. No valid reason was advanced for seeking his discharge. It is also clear that the dismissal of counsel after four days of trial would have been disruptive. The trial judge did not abuse his discretion in denying Ellenbogen's motion. *United States v. Ellenbogen* 365 F.2d 982, 988-89 (2d Cir. 1966).

No argument is made by the defendant that he was prejudiced by the refusal of his request. We cannot say that by the mere refusal of the request the defendant was prejudiced, especially, in view of the trial court's statement that defendant's counsel was adequately representing him. We

add unhesitatingly, upon our own perusal of the record that trial counsel for the defendant competently represented his client.

The necessity for an orderly trial has not been overcome by a showing of prejudice in the denial of a request to dismiss trial counsel. For this reason the trial court committed no error by such refusal.

By assignment of error No. 2 the defendant complains that the trial court erred in allowing Detective Fawcett to testify that while the defendant was under arrest at the apartment he made no comment concerning the ownership of some of the items containing narcotics when they were shown to him. This contention is based upon the rule that a defendant's admission by silence after arrest is not admissible. *State v. Tembruell*, 50 Wn.2d 456, 312 P.2d 809 (1957); *State v. Redwine*, 23 Wn.2d 467, 470, 161 P.2d 205 (1945). In the latter case we said:

> The general rule is that, when a statement is made in the presence and hearing of an accused that is accusatory or incriminating in character, and such statement is not denied, contradicted, or objected to by him, both the statement and fact of his failure to deny, contradict, or object are admissible on a criminal trial as evidence of his acquiescence in its truth. . . .
>
> . . . . .
> The authorities are in conflict as to whether the foregoing rule is applicable if, at the time the statement is made, the accused was under arrest. The rule in this state is set forth in *State v. MacKenzie*, 184 Wash. 32, 49 P. (2d) 1115, as follows:
>
> "The rule that the mere arrest is sufficient to render inadmissible the fact of the accused's failure to deny accusatory statements made in his presence and hearing is supported by the weight of authority and certainly by the better reasoning."

The state argues against the applicability of the rule in this instance for the reason that no accusatory statement was made by Detective Fawcett nor was any question asked.

■ Whether or not, under the facts of this case, the conduct of Fawcett called for an answer or explanation, we

will not labor at this time since there was no objection to the question and answer at the trial nor was there a motion to strike the testimony. This court has repeatedly held that issues not raised at the trial level cannot for the first time be raised on appeal. *State v. Mudge,* 69 Wn.2d 861, 420 P.2d 863 (1966).

By assignment of error No. 3 defendant argues a witness, Virginia Dorsey, was allowed to make a hearsay statement that defendant lived with Mary Lee Kinzy. A careful consideration of the record reveals no prejudicial error.

By assignment of error No. 5 defendant complains that the trial judge urged the defendant to take the stand. This occurred following the court's refusal to permit the defendant to discharge his attorney. The judge then said in the absence of the jury:

> Now I saw when this Dorsey lady got on the stand you were dissatisfied with what she said. I could tell by your actions. Now all you have to do is get on the stand and say she wasn't telling the truth.

We do not interpret this statement, in the light of the record leading up to the judge's remarks, that the defendant was "urged" to take the stand. The record discloses that he was represented by competent and conscientious counsel and we will not assume that he took the stand because of the judge's statement or against his own wishes. We find no prejudicial error.

We note that the assignments of error enumerated by the defendant's court-appointed counsel for this appeal and the brief submitted by the defendant pro se are not in the same numerical order. The substance of the remaining assignments of error designated by counsel and defendant pro se is that the court erred in allowing the state to impeach the defendant by evidence of inconsistent statements without a proper foundation being laid and that the court erred concerning the comparison of the defendant's handwriting on the police department booking sheet because the defendant was not advised that his signature could be used against him. Neither of these issues were raised at the trial, hence

they will not be discussed by this court. *State v. Mudge, supra.*

The judgment is affirmed.

FINLEY, C. J., WEAVER, HUNTER, and HALE, JJ., concur.